JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
FLORIDA APNEA DIAGNOSTICS, FAD DME LLC, and FAD TAMPA LLC, in the name and on behalf of patient JOHN SMITH, and on behalf of all others similarly situated.

**DEFENDANTS**
AETNA, INC. and AETNA LIFE INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff   Pasco County, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jason B. Martin, Esquire / THE MARTIN LAW FIRM, P.C.
725 Skippack Pike, Suite 337, Blue Bell, PA 19422

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                              | PTF | DEF |                                                                     | PTF | DEF |
|----------------------------------------------|-----|-----|---------------------------------------------------------------------|-----|-----|
| Citizen of This State                        | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State        | ☐ 4 | ☐ 4 |
| Citizen of Another State                     | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State    | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country      | ☐ 3 | ☐ 3 | Foreign Nation                                                      | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☒ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001 et seq.)
Brief description of cause:
Defendants violated ERISA through improper benefit determinations

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                          DOCKET NUMBER

DATE
03/16/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

*FLORIDA APNEA DIAGNOSTICS,*
*ET AL.*
          v.

*AETNA, INC and AETNA LIFE INSURANCE COMPANY*

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (✗)

| | | |
|---|---|---|
| *3/16/18* | *Jason B. Martin* | *Plaintiffs* |
| **Date** | **Attorney-at-law** | **Attorney for** |
| *215·646·3980* | *215·646·3987* | *jbmartin@jbmartinlaw.com* |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: *Florida Apnea Diagnostics: Wesley Chapel, FL    J. Smith: Florida*

Address of Defendant: *980 Jolly Road, Blue Bell, PA 19422*

Place of Accident, Incident or Transaction: _____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐   No☒

Does this case involve multidistrict litigation possibilities?    Yes☐   No☑

*RELATED CASE, IF ANY:*

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes☐   No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☐   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐   No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes☐   No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    (Please specify) *ERISA*

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, *Jason B. Martin* , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: *3/16/18* _____    _____    *82767*
                              Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: *3/16/18* _____    _____    *82767*
                              Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FLORIDA APNEA DIAGNOSTICS, FAD DME LLC, and FAD TAMPA LLC, in the name and on behalf of patient JOHN SMITH, and on behalf of all others similarly situated,[1]<br><br>Plaintiffs,<br><br>v.<br><br>AETNA, INC. and AETNA LIFE INSURANCE COMPANY,<br><br>Defendants. | CLASS ACTION COMPLAINT<br><br><br><br><br>No. |

## COMPLAINT

Plaintiff Florida Apnea Diagnostics, FAD DME LLC and FAD TAMPA LLC (collectively, "FAD"), in the name and on behalf of Patient John Smith ("Smith," and collectively with FAD, "Plaintiff")), and on behalf of all others similarly situated, bring the following complaint against Defendants Aetna, Inc. and Aetna Life Insurance Company ("Aetna" or "Defendant"), as follows:

### INTRODUCTION

1.     Aetna is in the business of insuring and administering health plans, many of which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

---

[1] The name of the patient referenced in this Complaint has been replaced with a pseudonym (Patient John Smith) to protect the patient's privacy. Similarly, the identification of the employer through which the patient's insurance plans have been issued is not disclosed. All of this information will be made available to Defendant, subject to an appropriate confidentiality agreement.

2.      Most of the health plans administered by Aetna cover health care services received by insureds from either in-network ("INET") providers (who have entered into contracts with Aetna to provide services at discounted rates) or out-of-network ("ONET") providers (who are not contracted with Aetna and have not agreed to accept payments below their billed charges). Each such plan has provisions that specify how benefits will be determined by Aetna, generally setting an "Allowed Amount" or "Recognized Charge," which reflects the maximum amount in benefits to be paid under the plan for a particular service.

3.      For INET services, the Recognized Charge is limited to the discounted rate agreed to by the INET providers. For ONET services, some plans specify that the Recognized Charge will be a specified percentage of the rates at which Medicare reimburses for the applicable services or other similar provision. Other plans provide that the ONET Recognized Charge will be the "Prevailing Charge" or a similar provision that is generally based on "usual, customary and reasonable" ("UCR") rates, or rates that represent what most other providers in the same geographic area would charge in the open market for the same treatment. This case solely involves plans with UCR-type reimbursement rates for ONET services, referred to herein as "UCR Plans."

4.      For its UCR Plans, Aetna is required to set the Recognized Charge based on a database published by FAIR Health, Inc. ("FAIR Health"), a publicly available database that reports on the usual market-rate charges of providers (i.e., the amounts they bill when not subjected to discounted rates pursuant to in-network contracts). In violation of these plan provisions, however, Aetna uses undisclosed methodologies that reimburse ONET providers far below the levels established by FAIR Health or otherwise are inconsistent with UCR. This results in the ONET providers being under-reimbursed, and insureds having increased financial

2

responsibility for the services at issue. Through this conduct, Aetna violated its obligations under ERISA.

## THE PARTIES

5.      Florida Apnea Diagnostics is a sleep center based in Wesley Chapel, Florida, which diagnoses and treats sleep apnea and other sleeping disorders. FAD DME LLC is the corporate entity used by Florida Apnea Diagnostics to obtain and provide medical equipment to FAD patients, while FAD TAMPA LLC is a physicians group that provides sleep studies and other healthcare services. Collectively, these entities are referred to herein as "FAD" or "Plaintiff." FAD has provided medically necessary services to many patients insured under policies issued and/or administered by Aetna.

6.      Patient Smith is a natural person who resides in Florida and is insured under a UCR Plan that is administered by Aetna. Smith's health plan is issued by Smith's private employer and is thereby governed by ERISA. Smith received care from FAD. Despite the fact that Smith is insured pursuant to a UCR Plan, the Allowed Amount that Aetna utilized to determine the benefits that Smith's Plan should and did pay is well below UCR, as reflected in the FAIR Health database. Smith appointed FAD to act on his behalf in pursuing his benefit claims with Aetna, including through litigation under ERISA. FAD has filed this action on Smith's behalf pursuant to this authorization.

7.      Aetna, Inc. is a health insurance company incorporated under the laws of the Commonwealth of Pennsylvania with its registered office at 980 Jolly Road, Blue Bell, PA 19422, which is in Montgomery County, and with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, CT 06156. Either directly or through its wholly-owned and controlled subsidiaries, Aetna, Inc. issues and administers health insurance plans and is delegated responsibility to make benefit determinations pursuant to those plans. As

3

such, Aetna, Inc. is a fiduciary under ERISA with regard to its benefit determinations at issue in this litigation.

8.    Aetna Life Insurance Company is a wholly-owned and controlled subsidiary of Aetna, Inc. that was established to fulfill the functions and purposes of Aetna, Inc. and to operate subject to the decisions and guidelines of Aetna, Inc. Patient Smith's ERISA plan identifies Aetna Life Insurance Company as the "Medical Program Administrator," pursuant to which it operates as the "Claims Administrator" under the plan. In explaining this role, the plan states:

> The Claims Administrators handle pre-certification procedures, case management, claims processing and review of denied claims, and provide customer service for all these functions. The Claims Administrators also set the terms and conditions for benefit claims procedures (for example, establishing the Recognized Charge or determining whether a service is Medically Necessary) and manage provider networks. . . . Disputed claims should be referred directly to the appropriate Claims Administrator.

9.    In this role, Aetna Life Insurance Company, acting directly and on behalf of and under the supervision and direction of Aetna, Inc., is also a fiduciary under ERISA. For purpose of submitting claims, Smith's plan identifies Aetna Life Insurance Company's office in El Paso, Texas.

## JURISDICTION AND VENUE

10.    Subject-matter jurisdiction is appropriate over Smith's claims under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

11.    This Court has personal jurisdiction over Aetna because Aetna is a resident of Pennsylvania by virtue of its incorporation in that state.

12.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (c)(2) by virtue of Aetna's residence in this district as its registered office is within this district.

6347094.1

## FACTUAL ALLEGATIONS

**A.**     **Patient Smith**

13.     Smith is an employee of a private company and receives health insurance through his employer pursuant to a UCR Plan administered by Aetna. As a "self-funded" plan, the benefits issued to or on behalf of Smith are paid out of the assets of Smith's employers. Aetna, however, has been hired as the claims administrator of the Plan and has been delegated the responsibility to make all benefit decisions and to resolve all appeals. Smith's Plan is governed by ERISA.

14.     Pursuant to the Smith Plan, he is entitled to use and have claims submitted on behalf of either INET or ONET providers. For INET providers, benefits are set based on a contract between such providers and Aetna, pursuant to which the providers agree to accept discounted rates for their services. ONET providers have not agreed to accept the amounts paid by Aetna, however. In explaining benefits for ONET services, the Smith Plan states:

> If you go to a provider outside the Network, your benefits will be at the Out-of-Network benefits level. If you choose a provider outside the Network, you may have to submit claims for the services provided. You will be responsible for:
> - Billed charges above the Recognized Charge;
> - Coinsurance amounts with no out-of-pocket maximum;
> - Deductibles; and
> - Limited or non-covered expenses.
>
> When you use an Out-of-Network provider, the Medical Care Program pays only 70% of the Recognized Charge for eligible expenses after your meet your deductible per Plan Year. You are responsible for the remainder of the charges including coinsurance (30% of the Recognized Charge) and 100% of all charges above the Recognized charge.

15.     The Smith Plan then defines "Recognized Charge," which determines the allowed amount for ONET services, as follows:

> The Covered Expense is only that part of a charge which is the Recognized Charge.

5

As to medical, vision and hearing expenses, the Recognized Charge for each service or supply is the lesser of:

- What the provider bills or submits for that service or supply; and
- For professional services and other services or supplies not mentioned below: the 80th percentile of the Prevailing Charge Rate for the Geographic Area where the service is furnished.

If the Claims Administrator has an agreement with a provider (directly, or indirectly through a third party) which sets the rate that the Claims Administrator will pay for a service or supply, then the Recognized Charge is the rate established in such agreement.

16.    The only "other services or supplies" that are mentioned thereafter with different reimbursement methodologies relate to pharmacy benefits. Thus, the ONET claims submitted by FAD are covered by this provision in the Smith Plan.

17.    The Smith Plan further explains:

As used above, Geographic and Prevailing Charge Rates are defined as follows:

- Geographic area: This means an expense area grouping defined by the first three digits of the U.S. Postal Service zip codes. If the volume of charges in a single three digit zip code is sufficient to produce a statistically valid sample, an expense area is made up of a single three digit zip code. If the volume of charges is not sufficient so produce a statistically valid sample, two or more three digit zip codes are grouped to produce a statistically valid same. When it is necessary to group three digit zip codes, the grouping never crosses state lines.
- Prevailing Charge Rates. These are rates reported by FAIR Health, a nonprofit company, in their database. FAIR Health reviews and, if necessary, changes these rates periodically. The Claims Administrator updates its systems with these changes within 180 days after receiving them from FAIR Health.

18.    As detailed in this provision, in the absence of an agreement with the provider, Aetna is required under the Smith Plan to set reimbursement rates for ONET services based on the FAIR Health database. This database is developed and promulgated by FAIR Health, Inc., a national, independent, not-for-profit corporation that monitors and reports on usual and customary charges in order "to bring transparency to healthcare costs and health insurance information."

6347094.1

19.     FAIR Health was established in October 2009 as part of the settlement of an investigation into Aetna and other insurers by the Office of the Attorney General of New York State into the health insurance industry's practice of determining out-of-network reimbursement based on data compiled and controlled by a major insurer, which the Attorney General determined was operating under a clear conflict of interest and was alleged to underpay out-of-network services. FAIR Health was subsequently formed "to establish and maintain a new database that could be used to help insurers determine their reimbursement rates for out-of-network charges and provide patients with a clear, unbiased explanation of the reimbursement process."

20.     Using millions of healthcare claims submitted to it by insurers, health care plans, and providers, FAIR Health created a database that reflects the rates that most providers charge in a given area. Publicly available on its website, a consumer can put in the zip code where a health care service is being provided and the CPT Code to be used by the provider for each specific healthcare service. "CPT" stands for "Current Procedural Terminology." CPT Codes are numbers developed and licensed by the American Medical Association to identify each individual healthcare service for billing purposes.

21.     Upon the zip code and CPT Code being input into the database, FAIR Health will provide the UCR for the pertinent procedure in the designated geographic area. As FAIR Health explains:

> The Estimated Charge is what FAIR Health, based on its database, estimates that a medical provider in your area may bill for the procedure you selected when performed out-of-network. This estimate is based on the charges billed by providers for this service in the geozip where the service was performed. (A geozip, which defines a geographic region in our database, generally corresponds to the first three digits of a zip code.)

7

6347094.1

The estimate shown is based on the 80th percentile, meaning that 80% of the charges in our database for this procedure in your area were lower than or equal to our estimate and 20% were higher than or equal to our estimate. We use the 80th percentile because many insurers use the 80th percentile to determine usual, customary and reasonable (UCR) rates upon which they base out-of-network reimbursement.

22.     As detailed herein, FAD was an ONET provider that never entered into an agreement to accept Aetna's reduced fee schedule for services provided to Aetna insureds. In paying benefits for the ONET services provided by FAD, Aetna violated the explicit terms of the Smith Plan and ERISA by failing to use the reimbursement methodology for ONET services required by the Smith Plan, and thereby under-reimbursing the claim submitted by FAD on behalf of Smith.

23.     Patient Smith has explicitly authorized FAD to bring this action on his behalf by signing a form which, among other things, provides as follows:

> To the extent any dispute arises between [FAD, defined as "Provider"] and my Plan and/or its fiduciaries relating to a Benefit Claim or the manner in which similar claims will be treated by the Plan and/or its fiduciaries now or in the future, it is my intention that the Plan and/or its fiduciaries give Provider on my behalf any and all rights to which I would otherwise be entitled, and I therefore appoint Provider as my true and lawful attorney-in-fact for the purpose of exercising the following powers on my behalf:
>
> 1.  To do all acts necessary for the purpose of pursuing administrative appeals;
>
> 2.  To do all acts necessary for the purpose of investigating, filing, pursuing, and resolving litigation on my behalf (including but not limited to selecting and retaining legal counsel) of any and all legal and all legal and equitable claims that I could bring against the Plan and/or its fiduciaries. Such legal and equitable claims shall include, but not be limited to, any and all claims (including breach of fiduciary duty claims) that I could bring pursuant to ERISA, 29 U.S.C. §§ 1132(a)(1), (a)(2) or (a)(3), other provisions of ERISA that grant me a cause of action, other federal or state statutes, or the common law, and shall include class claims in which Provider services as a class representative (hereinafter, collectively, "Causes of Action"). If Provider brings such an action, I agree to be bound by a final determination of such action rendered by a court or regulatory proceeding. . . .

8

6347094.1

24.     Patient Smith further stated in signing the form that, "[t]o the extent the Power of Attorney designation . . . is deemed ineffective for any reason, I hereby designate Provider as my Authorized Representative as provided under ERISA, 29 C.F.R. § 2560.503(1)(b)(4), for purposes of exercising the powers described [herein] or authorized under law, whichever powers are greater.

25.     To confirm his intent in signing the form, Smith also verified in the Wherefore clause that "it is my intention to have any benefits owed to me by the Plan paid directly to Provider, and to give Provider the right to bring – on my behalf – any and all legal or equitable claims that I have against the Plan and/or its fiduciaries relating in any way to benefits that are owed to me or may be owed to me in the future with respect to such services." Thus, in bringing this action, FAD is operating pursuant to an explicit authorization and designation from Patient Smith.

**First Benefit Claim**

26.     Patient Smith underwent treatment at FAD for sleep apnea syndrome on February 21, 2017. In particular, he was provided sleep monitoring services at a FAD facility, in which he used a device that provided continued pressured respiratory pressure ("CPAP"), while his sleep was being monitored. As explained in the technical report prepared by FAD relating to the service:

> This sleep study included the recording and monitoring of frontal, central, and occipital EEG, EOG, EMG, ECG, respiratory effort and flow, snoring, pulse, oximetry, and position. Video recordings were obtained as needed. A qualified technician continually monitored patient throughout the night. Data was digitally stored and tabulated using Alice 6 software. Sleep staging and respiratory events were scored manually using AASM standards.

9

6347094 1

27.    Following the technical portion of the sleep test, the data was compiled and a report was prepared, which was reviewed and evaluated by a board certified sleep physician on or about March 2, 2017. That physician then developed a treatment plan going forward for Smith.

28.    To facilitate his ability to have his claim submitted to and processed by FAD, Smith assigned his benefits to FAD. Pursuant to the assignment of benefits, FAD was authorized to submit the claim and be paid directly by Aetna for the services FAD provided to Smith, and further confirmed that he was financial responsible for any portion of the bill that was not paid by Aetna. This assignment process is recognized and approved under the Smith Plan, which states:

> Many health care providers request an assignment of benefits as a matter of convenience to both provider and participant. Also, as a matter of convenience, a Claims Administrator will, in its sole discretion, assume that an assignment of benefits has been made to the provider. A Claims Administrator will make direct payment to the hospital, clinic or physician's office, unless the Claims Administrator is advised, in advance, that you have already paid the bill. . . . You or the provider of services will be contacted if additional information is needed to process your claim.

29.    FAD filed a claim with Aetna on behalf of Smith on March 8, 2017. In this claim, FAD followed the traditional billing protocol for providers by breaking down the bill by individual procedures, as reflected in CPT codes (as described above), or, for certain other charges involving services or supplies not included in the CPT Codes, as reflected in codes developed for Medicare called Healthcare Common Procedure Coding System (or "HCPCS").

30.    In its March 8th claim, FAD billed a total of $13,300.00, using its customary internal fee schedule for its healthcare services. This included a bill for $10,200 for the sleep monitoring services performed at the FAD facility on February 21, 2017, using CPT Code 95810-TC. The "TC" represented a modifier added by FAD to demonstrate that this charge

6347094.1

reflected the facility fee and technical service charge. The claim also included a separate charge for $3,100, using CPT Code 95810-26, which represented the professional fee relating to the physician's evaluation and assessment of the results of the sleep monitoring services on March 2, 2017.

31.    In response to the FAD claim, Aetna sent FAD an Explanation of Benefits ("EOB") dated March 22, 2017, which reported in detail how Aetna had processed the claim. In the EOB, Aetna recognized the full $3,100 for the professional fee as within the "allowed amount" under the plan. It then applied $930 as the co-insurance (30% of the allowed amount), which remained the responsibility of the patient. It proceeded to identify the "Payable Amount" as $2,170. For the $10,200 portion of the bill reflecting the technical component, Aetna excluded $8,400 from coverage, explaining its finding with Remark Code "1," which stated:

> The member's plan provides benefits for covered expenses at the prevailing charge level made for the service in the geographical area where it is provided. You may bill the member for the difference between the submitted and paid charges.

32.    After deducting the $8,400 from the bill, leaving $1,800 as the Recognized Charge, Aetna then reduced this amount by $1,354.51 to apply toward the deductible and $133.65 for co-insurance, leaving $9,888.16 as the patient's responsibility. It identified the remaining $311.84 as the payable amount. Combining the technical and professional components of the charges, Aetna set the total Recognized Charge for CPT Code 95810 as $4,900. Aetna then "issued" $2,481.84 in benefits, and identified a total of $10,818.16 as the "Total Patient Responsibility."

33.    Aetna's reduction in benefits below billed charges constitutes an "adverse benefit determination" under ERISA, which entitled FAD, on behalf of Patient Smith, to obtain a "full and fair review" of Aetna's benefit determination.

11

34.    After receiving the denial from Aetna, FAD engaged in a series of telephone conversations with Aetna in which FAD initiated an appeal of Aetna's adverse benefit determination and sought recalculation of the benefits owed under the Smith Plan. This included telephone calls with Aetna representatives on April 26, 2017, May 2, 2017, May 15, 2017, May 29, 2017, June 29, 2017 and July 29, 2017. Each time, FAD explained that it believed that the claim had been underpaid and was informed by the Aetna representative that the claim was being sent back for review to consider whether there needed to be a correction in the pricing.

35.    On August 14, 2017, Aetna informed FAD by telephone that no additional payment was allowed and that FAD needed to submit a reconsideration request in writing, which FAD did on August 17, 2017.

36.    By letter to FAD dated August 28, 2017, Aetna denied the FAD appeal, stating:

We received your request for additional payment of services for [Patient Smith]. After reviewing the file, we have determined that no amount in addition to our original payment to you is required. Your payment amount is based on the reported service(s) and our determination of a fair payment for the service(s) provided. Given that we believe that our original amount was fair for the circumstances, no additional amounts will be paid on this claim.

**How we decide on the payment amount.**
To determine the payment amount when the provider does not participate with us and the plan does not define the applicable allowable amount, our responsibility is to pay a fair amount for your services.

For your services, this payment is set at FAIR Health 80 percentile. We will consider this as payment in full under the terms of the member's plan and additional reimbursement will not be considered. . . .

37.    After reporting that it had denied the appeal, Aetna added in its letter that "you *may* appeal this decision in writing" (emphasis added). The letter did not inform FAD of any timing restrictions for filing an appeal, nor did it specify that this second level appeal was required before pursuing a legal challenge to Aetna's denial. FAD nevertheless filed a

6347094.1

subsequent written appeal to Aetna on September 14, 2017, which Aetna denied on October 4, 2017.

38.    Contrary to Aetna's affirmative representation in its initial denial, which was never corrected, that it was complying with FAIR Health, it was not. Thus, Aetna's appeal process violated ERISA by being based on false and misleading representations. Fair Health reports a total ONET charge at the 80th percentile for CPT Code 95810 in zip code 33544 (where the service was provided by FAD) as $13,040. In contrast, Aetna only allowed a total of $4,900, or less than 38% of the FAIR Health amount.

39.    In adopting and applying its ONET reimbursement policy, Aetna violated the terms of Smith's Plan and left Smith liable for the $10,086.00 portion of the bill that Aetna did not pay.  Had Aetna adhered to the terms of the plan, it would have paid far more of the bill. Consequently, Aetna harmed Smith and FAD.

**Second Benefit Claim**

40.    Following the sleep study and evaluation, FAD prepared a treatment plan for Smith, in which he was provided CPAP devices for home use, designed to treat his sleep apnea. While such devices are sometimes rented to patients, with Medicare providing rental coverage for up to 13 months, FAD sold the device to Smith based on its conclusion that Smith's use of the CPAP devices was medically necessary, and would remain medically necessary for years given the chronic nature of Smith's condition.

41.    On April 10, 2017, FAD provided the devices to Smith, with instructions, for which it submitted a benefit claim to Aetna on April 14, 2017. In this claim, FAD billed $75 for CPT Code 94660-26, to reflecting the initiation and management of Smith's sleep disorder issues through CPAP devices. In addition, FAD billed a total of $12,980.06 for the various devices and

related items needed by the patient, using HCPCS Codes A9279, A7046, A4604, E0601, E0562, A7039, A7038, A7035, and A7030. In each case, FAD added a "NU" modifier to reflect that this represented a purchase of a new device by the patient, rather than a rental ("RR") or purchase of a used device ("UE"). For each such code, FAD also added a "KX" modifier, to report that coverage criteria for the supplies had been met and that documentation existed to support medical necessity for the items, which was available upon request.

42.    Aetna submitted an EOB to FAD on April 19, 2017 reporting on how it had processed the April 10 claim. In the EOB, Aetna reported that a total of $10,551 was excluded from coverage as "not payable," with remark code 1 used for seven specific devices, stating:

> The member's plan provides benefits for covered expenses at the prevailing charge level made for the service in the geographical area where it is provided. You may bill the member for the difference between the submitted and paid charges.

43.    After deducting the portion of the bill deemed to exceed the "prevailing charge level," Aetna then deducted a total of $695.72 to apply to Smith's co-insurance, and issued benefits totaling $1,623.34. The EOB then reported that "Total Patient Responsibility" equaled $11,356.72. As with regard to the first EOB, this represented an adverse benefit determination under ERISA.

44.    As with the first claim, FAD engaged in a lengthy series of telephone calls with Aetna in which it initiated an appeal and sought reconsideration of Aetna's benefit determination. This occurred in the same dates identified above for the calls in which FAD also raised the appeal of the first claim:  April 26, 2017, May 2, 2017, May 15, 2017, May 29, 2017, June 29, 2017 and July 29, 2017. And just like with the first claim, FAD was not informed until August 14, 2017, that Aetna had definitively denied the appeal and would issue no additional payments, with FAD instructed to submit a written request for reconsideration.

14

45.    By letter dated September 18, 2017, FAD submitted its written appeal of the benefit determination relating to the April 10, 2017 claims.

46.    On September 29, 2017, Aetna issued a final denial letter relating to FAD's appeal, stating:

> **Final level of appeal response – previous determination upheld.**
> With this review, your request for payment of the claim(s) referenced above has reached the final level of appeal available through us. Based on our review of available information, including the appeal request, we have made the following determination.
>
> We are upholding the original benefits determination for the processing of services rendered on April 10, 2017. After our review, we have determined that he claim in question processed correctly based on the terms of the member's out-of-network benefits, as your provider is not part of the Aetna network. For most of our health plans, we use the 80th percentile to calculate how much to pay for out-of-network services. Payment at the 80th percentile means 80 percent of charges in the database are same or less for that service in a particular zip code. We pay our portion of the prevailing charge as listed in the member's health plan. The member pays their portion (called "coinsurance") and any deductible. Therefore, no additional payment will be made in regards to this claim.

47.    Aetna again misrepresented its reliance on FAIR Health in setting the reimbursements rates for FAD's claims. In particular, with respect to FAD's primary charge relating to the purchase of the CPAP device, FAIR Health only reported the *rental* fees, not the *purchase* price for the device. Thus, while FAD filed a claim for E0601-NU, representing the purchases of a new CPAP device, with a billed price of $9,845, FAIR Health only reports the prevailing charge for rental, listing it at a monthly cost of $180. Nothing in the Smith Plan warranted limiting benefits to rental fees and, since the CPAP could be used potentially for years, there is no reasonable analogy between the respective rental and purchase prices.

48.    Even assuming the rental fee is considered, Aetna authorized too little. Under Medicare, such devices can be rented for up to 13 months. Taking the FAIR Health number and applying that to a 13-month rental yields a total of $2,340. While this is not a reasonable estimate

6347094.1

for a purchase, it nonetheless is far higher than the $1,000 identified by Aetna in its April 19, 2017 EOB as the allowed amount for this device. The result is a material underpayment to FAD and a substantial increase in financial responsibility for Smith.

49.    Other claims that were submitted by FAD similarly were improperly processed by Aetna, as reflected in the April 19, 2017 EOB. For example, while FAIR Health reports $334 as the prevailing charge for A7030 (full face mask), Aetna only allowed $260 and paid reduced benefits based on that improperly low number. As a result, Aetna violated the Smith Plan and ERISA by improperly calculating ONET benefits, thereby harming both Smith and FAD.

## CLASS ALLEGATIONS

50.    Aetna has adopted and applies internal policies for calculating benefits for ONET services which are contrary to the terms and conditions of the applicable ERISA plans and in violation of ERISA. Based on information and belief, FAD's claims were not subject to unique policies, but serve as a representative example of many insureds and their ONET providers whose claims are improperly reduced by Aetna.

51.    Plaintiff FAD, acting on behalf of Patient Smith, brings claims on behalf of a class defined as:

> All persons in the United States who were insured under an ERISA health insurance plan issued and/or administered by Aetna which provides for a Recognized Charge or Allowed Amount based on the "Prevailing Charge Rate," "FAIR Health" or similar language, and who submitted a benefit claim, or had a benefit claim submitted on their behalf, which was processed by Aetna at any time within the applicable statute of limitations and for which the allowed amount as determined by Aetna was lower than the number reported by FAIR Health at the applicable percentile specified under the Aetna plan.

52.    The members of this proposed Class are so numerous as to make joinder of all members impractical.  Although the precise numbers are currently known only to Aetna, Aetna is one of the largest insurance companies in the United States and administers claims on behalf of

6347094.1

millions of insureds. Moreover, Aetna has represented in its September 29, 2017 denial letter to FAD that it relies on 80th percentile of FAIR Health to set ONET reimbursement rates for "most" of its plans. It can therefore reasonably be concluded that, at a minimum, thousands of insureds and their ONET providers are impacted by these practices.

53.    There are questions of law or fact common to the class, including but not limited to whether, in setting the allowed amounts for ONET services, Aetna may ignore the reported data by FAIR Health.

54.    The claims of Smith, which are being asserted here on his behalf by FAD, are typical of the class claims. The Smith Plan, as is true for "most" Aetna plans, requires that ONET services be reimbursed based on FAIR Health. FAD, on behalf of Smith, was underpaid because of Aetna's practices which are at issue in this action on behalf of the putative Class.

55.    FAD, acting on behalf of Smith, will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and the prosecution of ERISA claims, and has no interests antagonistic to or in conflict with those of the Class.

56.    Aetna has acted on grounds that apply generally to the class, as Aetna has a set policy applicable to "most" of its plans. As a result, enjoining Aetna from applying internal policies which are contrary to Plan terms and requiring it to make proper UCR-based benefit determinations when processing ONET claims would be appropriate, and, as detailed below, is part of the relief sought.

57.    Questions of law or fact common to the Class members predominate over any questions particular to individual class members. The overriding common question is whether Aetna's methodology for calculating UCR rates is consistent with the methodology set forth in

6347094.1

"most" of its plans. Once the Court has determined the correct formula that Aetna must apply under its plan terms for setting ONET reimbursements, the specific amount Aetna owes to class members under that formula can be determined formulaically.

58.     In its role as a claims administrator for the plans at issue, and in serving as an ERISA fiduciary, Aetna maintains records of when and how it receives, processes, and pays or refuses to pay claims for ONET treatment. Accordingly, the members of the Class could be readily and objectively ascertained through use of Aetna's records.

## COUNT I
### (claim for relief under ERISA, 29 U.S.C. § 1132(a)(1)(B))

59.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

60.     This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

61.     Aetna systematically violated the terms of the Class members' ERISA plans by setting the allowed amounts for ONET services below the prevailing charges identified by FAIR Health, causing the plans to pay less in benefits than the plan terms required.

## COUNT II
### (claim for relief under ERISA, 29 U.S.C. § 1132(a)(3)(A))

62.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

63.     This count is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), to enjoin Aetna's acts and practices, as detailed herein. Plaintiff brings this claim only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

6347094.1

64.    Aetna systematically violated ERISA and the terms of the Class members' ERISA plans by setting the allowed amounts for ONET services below the prevailing charges identified by FAIR Health.

## COUNT III
### (claim for relief under ERISA, 29 U.S.C. § 1132(a)(3)(B))

65.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

66.    This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B), to obtain appropriate equitable relief to redress Aetna's violation of ERISA and of its UCR-based plans. Plaintiffs bring this claim only to the extent that the Court finds that the equitable relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

67.    By engaging in the misconduct described herein, Aetna was unjustly enriched in two ways: first, with regard to fully-insured plans or plans that include a stop-loss provision requiring Aetna to pay all benefits above a certain threshold, Aetna avoided paying benefits out of its own funds and/or the funds of its corporate affiliates; second, with regard to other self-funded plans, Aetna charged its corporate customers fees for serving as claims administrator while improperly denying benefits based on invalid reimbursement policies as detailed herein, and also lowered costs for its corporate customers, allowing Aetna to retain current customers and expand its business to new customers.

68.    It would be inequitable to allow Aetna to retain these benefits, in light of Aetna's misconduct. Thus, Plaintiff and the Class are entitled to appropriate equitable relief, including but not limited to an appropriate monetary award based on disgorgement, restitution, surcharge or other basis, pursuant to 29 U.S.C. § 1132(a)(3)(B).

WHEREFORE, Plaintiff demands judgment in its favor against Aetna as follows:

A.      Certifying the Class and appointing FAD as Class Representative;

B.      Declaring that Aetna violated its legal obligations in the manner described herein;

C.      Permanently enjoining Aetna from engaging in the misconduct described herein;

D.      Ordering Aetna to repay all class members, with interest, for the amount of ONET benefits underpaid as a result of Aetna's ERISA violations as alleged herein or, alternatively, ordering Aetna to reprocess all wrongfully denied claims in compliance with plan terms and without the improper reductions described herein;

E.      Ordering Aetna to make an equitable surcharge payment to Plaintiff and members of the Class, or otherwise to disgorge profits or make restitution, as appropriate;

F.      Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

G.      Granting such other and further relief as is just and proper in light of the evidence.


Dated: March 16, 2018

Respectfully submitted,


 /s/ *Jason B. Martin*
Jason B. Martin, Esq.
THE MARTIN LAW FIRM, P.C.
725 Skippack Pike, Suite 337
Blue Bell, PA 19422
215.646.3980

D. Brian Hufford, Esq. (*pro hac vice* pending)
Jason S. Cowart, Esq. (*pro hac vice* pending)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th floor
New York, NY 10022
212.704.9660

Andrew Goldfarb, Esq. (*pro hac vice* pending)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000

20

6347094.1

Washington, D.C. 20036
202.778.1800

Adam Abelson, Esq. (*pro hac vice* pending)
**ZUCKERMAN SPAEDER LLP**
100 E. Pratt St., Suite 2440
Baltimore, MD 21202
410.332.0444

John W. Leardi, Esq. (*pro hac vice* pending)
**BUTTACI, LEARDI & WERNER, LLC**
103 Carnegie Center, Suite 323
Princeton, NY 08540
609.297.5942

*Counsel for Plaintiff and the Putative Class*

21